IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| KELLY KRAMPITZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LEGAT ARCHITECTS, INC., an Illinois ) <br> corporation, ) <br> ) <br> Defendant. ) | Case No.: <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT AT LAW

NOW COMES, Plaintiff, KELLY KRAMPITZ, by and through her counsel, SHERRER & BURTNETT, LLC and CLARISSA Y. CUTLER, Attorney at Law, and complaining of Defendant, LEGAT ARCHITECTS, INC., an Illinois corporation, states as follows:

## PRELIMINARY STATEMENT

This is an action seeking redress for violation of rights guaranteed to Plaintiff by the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et. seq*. ("ADA"), the Family Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et. seq*. ("FMLA"), the Illinois Wage Payment and Collection Act 820 ILCS 115/1 *et seq.* ("IWPCA"), as well as a state law claim for intentional infliction of emotional distress. Plaintiff seeks declaratory, injunctive, and equitable relief, as well as monetary damages, to redress Defendant's discriminatory employment practices against Plaintiff because of her disability, retaliation due to her internal complaints and filing of a charge with the Equal Employment Opportunity Commission (EEOC), interference with her rights under the FMLA, retaliation for exercising her rights under the FMLA, unpaid wages under the IWPCA, and intentional infliction of emotional distress.

## PARTIES

1. Plaintiff KELLY KRAMPITZ (hereinafter "Krampitz") is a female citizen of the State of Wisconsin residing in Racine, Wisconsin.

2. Defendant LEGAT ARCHITECTS, INC. (hereinafter "Legat") is and was at all times material hereto, an Illinois corporation with its principal place of business in this district. Defendant is and was at all times material hereto an employer within the meaning of the ADA, the FMLA, and the IWPCA, and the locations for which Ms. Krampitz worked at the time of the events in question were in Waukegan, Illinois and Crystal Lake, Illinois. At all times relevant to Plaintiff's claims, Defendant has employed fifteen (15) or more employees. At all relevant times, Defendant met the definition of an "employer" under all applicable statutes.

## JURISDICTIONAL STATEMENT

3. All operative facts in this case took place at Legat's place of business in Waukegan, Illinois. Jurisdiction of this Court is invoked pursuant to § 107(a) of the Americans with Disabilities Act of 1990 [42 U.S.C. § 12117(a)] (incorporating § 706(f)(3) of Title VII of the Civil Rights Act of 1964, as amended, [42 U.S.C. §2000e-5(f)(3)]), 28 U.S.C. §§ 1343(a)(3) and (4), and 28 U.S.C. § 1331, as well as supplemental jurisdiction under § 1367(b) of the Judicial Code [28 U.S.C. § 1367]. Krampitz seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

4. Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2) in that the majority of the operative facts in this case took place in Legat's place of business located in the County of Lake, City of Waukegan, State of Illinois, in the Northern District of Illinois, Eastern Division, and the

unlawful employment practices giving rise to Krampitz's claims occurred in this District and Division.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Krampitz has met all of the administrative prerequisites to bringing an action in federal court under the ADA in that she timely filed a charge against Legat asserting the acts of discrimination on account of her disability indicated in this Complaint with the United States Equal Employment Opportunity Commission ("EEOC"), on or about November 9, 2012, attached to this Complaint as Exh. A. Krampitz returned a copy of her signed Charge to the EEOC on November 28, 2012. After her termination, Krampitz submitted her amended Charge with the EEOC on or around December 18, 2013. A copy of the amended Charge is attached hereto as Exh. B.

6. Plaintiff was issued a Notice of Right to Sue on April 10, 2014 and received it on April 12, 2014. A copy of the Notice of Right to Sue is attached to this Complaint as Exh. C.

7. As such, Krampitz's Complaint is timely filed within ninety (90) days of the receipt of the Notice of Right to Sue.

8. Any and all other prerequisites of this suit have been met.

## COMMON ALLEGATIONS

9. Krampitz is a disabled female who was hired by Legat to perform architectural design work on or around October 15, 2006.

10. Legat is an architectural firm licensed and providing architectural services in the State of Illinois as a corporation. Legat has several offices in and around the Chicago area, including Krampitz's location in Waukegan, Illinois.

11. Krampitz suffers from fibromyalgia, rheumatoid arthritis, severe and debilitating digestive issues, as well as other medical conditions.

12. Krampitz's young son, Damon Krampitz (hereinafter "Damon") also was and is disabled with a rare autoimmune disease that caused stomach pain, migraines, muscle and joint pain, sensitivity to light and sound, and overall debilitating weakness. Damon has also had bouts of paralysis, including during the time frame discussed and considered in this Complaint. Damon was often severely debilitated and unable to care for himself without the assistance of Krampitz.

13. Krampitz worked for Legat as an architect. Although Krampitz was not officially licensed as an architect in Illinois, she performed almost all of the practical job functions of an architect, including the creation of project plans and drawings. Upon information and belief, this is standard practice in architectural firms throughout Illinois.

14. During Krampitz's employment, Legat was aware of Krampitz's disabilities since at least 2010. On October 23, 2010, one of Krampitz's doctors submitted a work status report to Legat indicating that Krampitz's could not lift more than five (5) pounds, should only walk short distances, should not climb, and should only sit for short periods of time.

15. Krampitz's supervisors and coworkers were also aware of the severe and disabling health issues of her son, Damon.

16. During her employment with Legat prior to 2012, Krampitz was allowed to work from home whenever she was unable to commute to the office due to her and/or Damon's condition(s). Legat also allowed several other employees to work from home as its standard employment practice.

17. On or around August of 2012 Krampitz spent additional time out of the office because Damon had begun a new and experimental treatment regime designed by medical

4

professionals in California. Krampitz's former supervisor(s) approved her plan to spend time out of the office and instructed her to focus on improving Damon's health. Unfortunately, Damon began experiencing adverse side effects to his new treatment and medications.

18. Around the same time, in August 2012, Christine Oleson (hereinafter Oleson) became Krampitz's new direct supervisor.

19. Plaintiff was informed by her coworkers, on information and belief, that Oleson had stated she did not want employees with disabilities working for Legat.

20. Oleson began sending Krampitz harassing emails regarding her timesheets and her time spent working from home. Olsen was aware of both Krampitz, and her son's medical conditions, and moreover, Krampitz offered to give Oleson doctor's notes documenting the seriousness of her son's condition but Oleson refused the offer. Oleson also informed Krampitz that her son's illness had "nothing to do with showing up to work."

21. Oleson mandated that Krampitz spend six consecutive hours in the office from 8:00 a.m. to 2:00 p.m. without a meal break. Further, Oleson would not allow Krampitz to work evenings or weekends to complete her assignments. Oleson also mandated that Krampitz use an entire hour of her vacation time even if she needed to leave the office only fifteen minutes early to care for herself or her son.

22. Krampitz was also in poor health around this time due to her own disability, which was exacerbated from stress resulting from Damon's worsening condition. On October 9, 2012, Krampitz's doctor submitted a second note to Legat indicating that she was not able to lift more than five (5) pounds, must avoid excessive walking, and was not able to sit for over an hour without getting up to move around.

23. On or around October 2012, Oleson had Krampitz's computer and computer system access removed and transferred Krampitz into an office located over an hour away from her former location. The restrictions implemented by Oleson made it extremely difficult for Krampitz to execute her assigned tasks, including responding to clients and completing her expense reports.

24. Oleson also changed Krampitz's hours and pulled her off of her assigned projects, instead assigning her degrading, menial tasks that were typically given to high school interns.

25. Legat did not inform Krampitz she was eligible for FMLA leave until October 2, 2012. Plaintiff's FMLA leave was approved on October 19, 2012 and Krampitz took an approved FMLA leave of absence from approximately November 2012 to February 2013.

26. Legat terminated Krampitz during the month of February, 2013, during her FMLA leave, and failed to inform her of the date she was required to return from FMLA leave, the fact that she would be terminated if she did not return from FMLA leave, or even the fact that she was terminated.

27. Krampitz only learned of her termination once she began to receive notices that her insurance would not being paying for her and her son's medical treatment.

## COUNT I

### Violation of the ADA –Discrimination, Harassment, Termination and Failure to Accommodate a Disability

28. Plaintiff realleges and incorporates by reference paragraphs 1-27 as paragraph 28 of Count I.

29. At all relevant times, Legat was an "employer" within the definition of §101(5) of the Americans with Disabilities Act of 1990 [42 U.S.C. §12111].

30. At all relevant times, Krampitz was an "employee" of Legat within the definition of §101(4) of the Americans with Disabilities Act of 1990 [42 U.S.C. §12111(4)] and a "qualified individual with a disability" within the definition of §101(8) of the Americans with Disabilities Act of 1990 [42 U.S.C. §12111] as her condition substantially limited major life activities including, but not limited to, walking, sitting, standing, and lifting objects more than five (5) pounds.

31. In addition, at all relevant times, Krampitz was an "employee" of Legat within the definition of §101(4) of the Americans with Disabilities Act of 1990 [42 U.S.C. §12111(4)] and a was a qualified caretaker of an "individual with a disability" within the definition of §101(8) of the Americans with Disabilities Act of 1990 [42 U.S.C. §12111] as her son's condition substantially limited his major life activities.

32. Legat discriminated against Krampitz by removing her from projects, giving her assignments that required little to no skill, taking away her computer access, and requiring her to travel when such travel was unnecessary to Plaintiff's job performance. Legat also required her to be in the office for six consecutive hours without a meal break, refusing to allow her to work from home or during evenings and weekends, and refusing to allow her to use vacation time to care for herself or her son.

33. The acts described above were intended to harass and discriminate against Krampitz due to her disability, and in the alternative, her son's disability.

34. Legat further failed to provide Krampitz with a reasonable accommodation despite her repeated requests.

35. Upon information and belief, other employees without medical conditions, or who are not caretakers for those with medical conditions, were treated more favorably than Krampitz and others with disabilities.

36. Furthermore, Legat discriminated against Krampitz by terminating her employment based on her disability, or in the alternative, her son's disability, in February 2012.

37. The effect of Legat's discriminatory employment practices has been to deny Krampitz equal employment opportunities, income in the form of wages, health insurance and childcare costs, and other benefits of employment because of her medical condition.

38. Moreover, Krampitz suffered emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses due to her firing.

39. Krampitz suffered lost future earnings based upon her firing.

40. Legat engaged in these discriminatory practices with malice or reckless indifference to her federally protected rights.

WHEREFORE, Krampitz prays that this Honorable Court enter judgment in her favor and:

(a) declare that the acts and practices complained of are violations of the ADA, as amended;

(b) direct Legat to make Krampitz whole for all earnings and benefits she would have received but for Legat's discriminatory treatment, including awarding her back pay, prejudgment interest, damages for all employment benefits she lost, and any other recoverable compensatory damages;

(c) award Krampitz damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses due to her firing;

(d) award Krampitz lost future earnings;

(e) direct Legat to pay punitive damages based upon its actions;

(f) award reasonable attorney's fees and costs; and

(g) order any other relief that the Court deems just and equitable.

## COUNT II

### Hostile Work Environment

41. Krampitz realleges and incorporates by reference paragraphs 1-40 as paragraph 41 of Count II.

42. During the course of her employment with Legat, Krampitz was subjected to unwelcome harassment by her supervisor, Christine Oleson. This unwelcome harassment was based on her disability and her son's disability.

43. The harassment by her supervisor was severe and pervasive so as to alter the terms and conditions of Krampitz's employment and create a hostile working environment.

44. As a result of the harassment by her supervisor, Krampitz suffered the damages as alleged.

WHEREFORE, Krampitz prays that this Honorable Court enter judgment in her favor and:

(a) direct Legat to make Krampitz whole for all earnings and benefits she would have received but for Legat's discriminatory treatment, including awarding her back pay, prejudgment interest, damages for all employment benefits she lost, and any other recoverable compensatory damages;

(b) award Krampitz damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses due to her firing;

(c) award Krampitz lost future earnings;

(d) direct Legat to pay punitive damages based upon its actions;

(e) award reasonable attorney's fees and costs; and

(f) order any other relief that the Court deems just and equitable.

## COUNT III

### Violation of the ADA – Retaliation

45. Krampitz realleges and incorporates by reference paragraphs 1-44 as paragraph 45 of Count III.

46. Legat terminated Krampitz in response to her internal and external complaints regarding discriminatory treatment and harassment based upon her disability.

47. Legat, by the actions and/or omissions alleged, retaliated against Krampitz in violation of the ADA.

48. The effect of Legat's discriminatory employment practices has been to deny Krampitz equal employment opportunities, income in the form of wages, health insurance and childcare costs, and other benefits of employment because of her medical condition.

49. Moreover, Krampitz suffered emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses due to Legat's discriminatory employment practices.

50. Krampitz suffered lost future earnings due to Legat's discriminatory employment practices.

51. Legat engaged in these discriminatory practices with malice or reckless indifference to her federally protected rights.

WHEREFORE, Krampitz prays that this Honorable Court enter judgment in her favor and:

(a) declare that the acts and practices complained of are violations of the ADA, as amended;

(b) direct Legat to make Krampitz whole for all earnings and benefits she would have received but for Legat's discriminatory treatment, including awarding her back pay, prejudgment interest, damages for all employment benefits she lost, and any other recoverable compensatory damages;

(c) award Krampitz damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses due to her firing;

(d) award Krampitz lost future earnings;

(e) direct Legat to pay punitive damages based upon its actions;

(f) award reasonable attorney's fees and costs; and

(g) order any other relief that the Court deems just and equitable.

## COUNT IV

### Violation of the FMLA—Interference

52. Krampitz realleges and incorporates by reference paragraphs 1-51 as paragraph 52 of Count IV.

53. The matters set forth in the Count arise from Legat's violations of the FMLA, 29 U.S.C. § 2601, *et seq*.

54. Legat is an "employer" under the § 2611(4) and Krampitz is an "eligible employee" under § 2611(2) of the FMLA.

55. In the year prior to September 2012, Krampitz had worked for Legat on a full-time basis, and had worked more than 1,250 hours.

56. Both Krampitz and her son, Damon, had a serious health conditions under the FMLA. Krampitz provided direct care for Damon due to his medical issues.

57. Krampitz believes that there was an "entitlement to leave" as defined in § 2612(1) of the FMLA, and that Krampitz was denied her entitlement to leave as prescribed in the FMLA.

58. Krampitz was entitled to take FMLA and had informed Legat of her need to take time off of work to care for her seriously ill child.

59. Legat informed Krampitz she was required to be in the office for six consecutive hours regardless of her son's physical health.

60. Legat did not notify Krampitz of her right to take leave under the FMLA until October 2, 2012.

61. Legat terminated Krampitz in February 2012, while she was taking her approved FMLA leave.

62. Legat never informed Krampitz of her return to work date, that she would be terminated if she did not return to work, or that she was terminated.

63. Krampitz is informed and believes, and on that basis alleges, that as a proximate result of Legat's conduct, Krampitz's right to FMLA to leave in order to care for herself and her seriously ill child was interfered with and impaired.

64. Legat's interference with Krampitz's rights under the FMLA was a willful and reckless violation of her rights.

WHEREFORE, Krampitz prays that this Honorable Court enter judgment in her favor and:

(a) declare that the acts and practices complained of are violations of the FMLA;

(b) direct Legat to make Krampitz whole for all earnings and benefits she would have received but for Legat's violations, including awarding her back pay, prejudgment interest, damages for all employment benefits she lost, and any other recoverable compensatory damages;

(c) award Krampitz lost future earnings;

(d) direct Legat to pay liquidated damages in an additional amount equal to the sum of the actual damages and interest pursuant to 29 U.S.C. § 2617(a)(1)(A);

(e) award reasonable attorney's fees and costs; and

(f) order any other relief that the Court deems just and equitable.

## COUNT V

### Violation of the FMLA--Retaliation

65. Krampitz realleges and incorporates by reference paragraphs 1-64 as paragraph 65 of Count V.

66. The matters set forth in the Count arise from Legat's violations of the FMLA, 29 U.S.C. § 2601, *et seq*.

67. Legat is an "employer" under the § 2611(4) and Krampitz is an "eligible employee" under § 2611(2) of the FMLA.

68. In the year prior to September 2012, Krampitz had worked for Legat on a full-time basis, and had worked more than 1,250 hours.

69. Both Krampitz and her son, Damon, had a serious health condition under the FMLA. Krampitz provided direct care for Damon due to his medical issues.

70. On or around November of 2012 Krampitz exercised her federally protected right to take unpaid FMLA leave in order to care for herself and her son.

71. Legat terminated Krampitz in February 2012, while she was taking her approved FMLA leave.

72. Legat never informed Krampitz of her return to work date, that she would be terminated if she did not return to work, or that she was terminated.

73. Legat terminated Krampitz in retaliation for taking FMLA leave.

74. Legat's conduct was willful and showed reckless disregard for Krampitz's federally protected rights.

WHEREFORE, Krampitz prays that this Honorable Court enter judgment in her favor and:

(a) declare that the acts and practices complained of are violations of the FMLA;

(b) direct Legat to make Krampitz whole for all earnings and benefits she would have received but for Legat's violations, including awarding her back pay, prejudgment interest, damages for all employment benefits she lost, and any other recoverable compensatory damages;

(c) award Krampitz lost future earnings;

(d) direct Legat to pay liquidated damages in an additional amount equal to the sum of the actual damages and interest pursuant to 29 U.S.C. § 2617(a)(1)(A);

(e) award reasonable attorney's fees and costs; and

(f) order any other relief that the Court deems just and equitable.

## COUNT VI

### Intentional Infliction of Emotional Distress

75. Krampitz realleges and incorporates by reference paragraphs 1-74 as paragraph 75 of Count VI.

76. Legat's conduct towards Krampitz during a time when both her and her son were seriously ill was extreme and outrageous. Legat had actual knowledge of the health condition of both Krampitz and her son and either knew or should have known that Krampitz was particularly susceptible to emotional distress.

77. Legat either intended to cause, or in the alternative, recklessly or consciously disregarded the probability of causing emotional distress to Krampitz.

78. As a result of Legat's conduct her physical condition deteriorated and she suffered severe stress and mental anguish. Therefore, Krampitz did in fact suffer extreme emotional distress.

79. Krampitz's emotional distress was proximately caused by Legat's conduct.

WHEREFORE, Krampitz prays that this Honorable Court enter judgment in her favor and:

(a) compensatory damages for the harm suffered as a result of Legat's intentional infliction of emotional distress; and

(b) order any other relief that the Court deems just and equitable.

## COUNT VII

### Violation of the Illinois Wage Payment and Collection Act (IWPCA)

80. Krampitz realleges and incorporates by reference paragraphs 1-79 as paragraph 80 of Count VII.

81. Legat meets the definition of "employer" and Krampitz meets the definition of "employee" under the IWPCA, 820 ILCS 115/2.

82. When Legat terminated Krampitz on or around February of 2012, Krampitz had accrued approximately sixty (60) hours of unused vacation time and several hours of personal time.

83. Under the IWPCA, the monetary equivalent of an employee's unused vacation time shall be paid to an employee as part of her final compensation.

84. Legat has failed, neglected, or refused to pay Krampitz for her unused vacation time.

85. In addition, Legat has failed to reimburse Krampitz for expenses and costs that she undertook due to her employment.

86. As a direct and proximate result thereof, Krampitz has been damaged in an unknown amount.

WHEREFORE, Krampitz prays that this Honorable Court enter judgment in her favor and grant her:

(a) the monetary equivalent of her unused vacation and personal time, plus prejudgment interest at the statutory rate pursuant to 815 ILCS 205/2;

(b) reasonable attorney's fees and costs of this action as provided by the Illinois Attorneys Fees In Wage Actions Act, 705 ILCS 225/1; and

(c) such other and further relief as may be just in law and in equity.

## JURY TRIAL DEMAND

Plaintiff hereby requests a jury trial on all issues of fact and law raised by the allegations in this Complaint.

Dated: July 8, 2014                          Respectfully Submitted,

                                                     KELLY KRAMPITZ

                         By:      /s/ Justin Burtnett
                                                      Justin Burtnett
                                                      Attorney for Plaintiff


Justin Burtnett, #6281100
Sherrer & Burtnett, LLC
155 North Michigan Avenue, Suite 200
Chicago IL 60601
(312) 574-0155


Clarissa Y. Cutler, #6257909
Alexandra Tropea, #6310352
Cutler Law Group, Ltd.
155 North Michigan Avenue, Suite 200
Chicago IL 60601
(312) 729-5067